Betty Jo MADIGAN, Appellant,

v.

UNITED FINANCE & THRIFT CO. OF
DALLAS, Inc., et al., Appellees.

No. 16442.

Court of Civil Appeals of Texas.

Dallas.

Jan. 22, 1965.

Rehearing Denied March 5, 1965.

Fritz, Vinson & Stevens, Dallas, for appellant.

Bailey & Williams and Irion, Cain, Cocke & Magee and Burt Berry, Dallas, for appellees.

BATEMAN, Justice.

Betty Jo Madigan, a feme sole, brought this suit against United Finance & Thrift Company of Dallas, Inc., and two affiliated corporations for $450.98 double damages for usurious interest paid, and for actual and exemplary damages on account of excessive and unreasonable collection efforts of appellees. Before trial the defendants stipulated that judgment should be rendered for plaintiff for the $450.98 double damages for usurious interest paid. The jury found that appellee United Finance & Thrift Company of Dallas, Inc., through its agents, servants or employees, made unreasonable collection efforts against plaintiff, but answered "No" to Special Issue No. 3, as follows:

> "Do you find from a preponderance of the evidence, that Plaintiff, Betty Madigan, suffered any physical illness or aggravation thereof after Defendant, United Finance & Thrift Company of Dallas, Inc., made any such efforts, if any you have found in answer to the foregoing issue?"

The jury found actual damages of $500 and $2,060 as exemplary damages, the collection efforts having been made with malice.

The court rendered judgment for appellant for the $450.98 and she appeals. Her first point is that the court erred in not granting a new trial because there was "no evidence" to support the answer of the jury to Special Issue No. 3. This point is overruled because, as hereinafter pointed out, there was at least some evidence to support the finding.

Appellant's second point asserts that the negative answer of the jury to Special Issue No. 3 was against the great weight and preponderance of the evidence. A proper consideration of this point requires us to review all of the evidence bearing upon whether appellant did or did not suffer any physical illness or aggravation thereof after the unreasonable collection efforts were made. In doing this we must consider all the evidence, that which supports, as well as that which is contrary to, the verdict. Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126; In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

Appellant owed United Finance & Thrift Company of Dallas, Inc., certain balances on three notes dated, respectively, July 29, 1960, June 8, 1961 and October 25, 1961. Appellee's collection efforts, which the jury said were unreasonable, began February 6, 1962 and extended over a period of slightly more than two months. As appellees do not attack the finding of unreasonableness of the collection efforts in any way, we shall not recite the testimony pertaining thereto.

Neither do we consider it necessary to set forth in detail the testimony regarding the effect of such collection efforts on appellant's health. A brief summary should suffice. It appears that she consulted Dr. Guerriero, a gynecologist, numerous times during the period from January 18, 1959 through May 7, 1962, although she did not consult him (or any other doctor) during the period in which the unreasonable collection efforts were made. Dr. Guerriero treated her for severe menstrual irregularities and disturbances and performed a dilation, curettage and biopsy of the cervix in March 1959. She said she did not discuss the contacts by appellee with Dr. Guerriero because she did not want to embarrass herself.

Appellant's testimony was to the effect that the telephone calls and visits from ap-

pellee's collectors caused her stomach to "start going around," her heart to "pound," her head to ache, and that sometimes she would tremble or "shake" and "get sick at her stomach and vomit," and sometimes she would become so upset she would "break out in a cold sweat all over." Sometimes she would cry, become depressed, nauseated, unable to sleep, and very nervous, which at times interfered with her work. She said that in February 1962 she received notices other than telephone calls but that this did not bother her because she knew she was "overdue" and this knowledge was enough to distress her. It is also noted that she stated that she had suffered moderately with these conditions prior to the time the unreasonable collection efforts began; and that even before she started getting the "badgering" she couldn't pay her bills and was worried about it and would get upset and couldn't sleep. She said that when the loans were paid on April 10, 1962 her headaches, weariness and fatigue disappeared, although her nerves have never "calmed down" and she still trembles and her heart pounds whenever she gets upset.

Appellant introduced several other witnesses, but their testimony simply tends to corroborate her statements about crying and being emotionally upset and nervous following contacts with appellee's collectors.

The last two items under the heading "Progress Notes" of Dr. Guerriero's records, as best we can make out the photostatic copy of the handwriting, are:

"4–27–62 wt. 149½ UA neg. BP 120/80
Had one day flow 1–8–62
Now having—hot flashes which are getting worse past 2 mo c 6 weeks.
No other problems.
Ex B P R Neg
Go see K__(illegible) for (illegible) & obesity Cyt.
Rx for flushes.

"5–7–62 No flushes. Complete Rx. Feels fine."

Thus it is seen that the evidence raised an issue of fact which the jury could have decided either way. We cannot say that the finding in question is against the great weight and preponderance of the evidence, and the judgment is therefore

Affirmed.